Good morning, everyone. Judge Hawkins, Judge Bennett and I want to welcome you to the Ninth Circuit. Thank you for being here. We have a number of matters on calendar today. Before we begin our first argument, I just want to remind counsel to keep track of your time. If you are going first and you want to save time for rebuttal, that's fine. Just keep track of your own time. And we do have the lights, so watch the lights. I'm not a super busy guy on time either. So when you're getting ready to be done, when the lights start flashing red, you need to wrap it up. The first matter on calendar today is United States v. Enrique Valencia-Lopez. Good morning. May it please the Court, my name is Ryan Moore. I represent the appellant in this matter, Mr. Valencia-Lopez. I'll try to reserve three minutes and I'll watch the clock on my own. I'll address this morning the decisive, the admissibility of the government expert's decisive opinion about duress, and then I'll focus on the denial of recross-examination of that same expert. The key moment in this trial came at the conclusion of the government's case-in-chief when its final witness, as the very last answer of his direct examination testimony, the government expert, opined that the likelihood traffickers would coerce a commercial truck driver to import drugs is almost nil. Did you try the case? No. Our office did. What was the objection to that question? The objection to the question was this is the ultimate issue. Was there any other objection? That was the extent of the objection. But that objection directly implicates Rule 704B, and to some extent 702, and it was clear also in context to the judge that that was the case because the issue had been litigated before trial in a motion in limine when counsel raised, objected on 704B grounds, among other grounds, to any opinion that would explain precisely how rare duress is or that duress never occurs. And so the district court, from the pretrial litigation and from the this is the ultimate issue objection, was aware of that. You know, the interesting thing about making that objection to an expert witness is that it almost assumes that the That's true. Of course, this witness had already been qualified as an expert by the district court. So when you make the ultimate issue objection and the expert's testifying, you're really only implicating Rule 704B and 702. I'm sorry. Go ahead. Counsel, I am unfamiliar. I've never seen a case where, whether in a civil or a criminal case, where an expert is sought to be qualified, that opposing counsel is denied the right to even voir dire the expert. Is that a normal practice in the District of Arizona? I can't answer that with certainty. I don't think it's uncommon. And in a case like this where we have an agent testifying as an expert, which is certainly a normal occurrence, at least in my experience, what happened here with the expert's qualifications being elicited on direct examination by the prosecutor is somewhat consistent. Now, not all judges will anoint the expert as an expert in open court, but defense counsel certainly requested voir dire of the expert in objecting to the expert's qualifications. Yeah, pretrial, as I understand the record, the district court said that there would be voir dire. I think the district court said there certainly could be voir dire at trial, and then denied defense counsel's request for voir dire on the expert's qualifications. That's right. This is a really interesting case in that Judge Zips allowed expert witnesses on both sides, right? Yes. So the defense had an expert witness. Correct. Whose testimony was directly, unsurprisingly, directly in opposition to the agent Hall, who was the government expert. Correct? Correct on the duress question. Yes. And the jury heard from your client also. Yes. So two competing experts and the client all focused on the issue of whether he was coerced or not. Yes. And jury could have found either way, right? It could have, and that's why this opinion and the qualifications of this expert, of the government's expert, is so crucial. Because this is a law enforcement expert, and this court has recognized that the testimony of a federal law enforcement agent as an expert carries a special aura of reliability and trustworthiness. And so this expert not only was really the government's only rebuttal of the duress claim and the centerpiece of their case, but was an extremely influential witness for this jury. And so for the expert to testify, to be qualified as an expert despite having no experience about how traffickers operate inside of Mexico, where this duress threat would have been carried out, and then to say almost nil, which the beauty of almost nil is that even as it admits possibility, it immediately dismisses it. And that's why almost nil runs afoul of Rule 704B, because it necessarily follows then, if traffickers never use coercion, it necessarily follows that the defendant did not have the mental state for duress, which is a well-grounded fear that threat would be carried out. I get your point. I thought it was interesting that whoever tried this case, for the defendant, I thought did a very effective job of cross-examining, commenting, etc., on the fact that the defense expert had extensive experience on drug trafficking in Mexico and crossing the border, whereas the government expert seemed to have very little. Is that a fair assumption? Yes, it is. And defense counsel, that was precisely how defense counsel articulated the objection to the government's expert's qualifications to the district court before the district court denied Vordeer a trial and further. And she thought that went to the weight and not the admissibility, right? That was the district court's ruling before trial, but I believe that was what she thought. But what we end up having is, well, excuse me, she believed, she understood before trial that the government was presenting this expert both as to blind mules, unknowing couriers, and as to duress. And she would be just fine. And then at the time of trial, in determining that this expert was qualified, she made a statement, Judge Zips, that she believed that this expert would only be testifying on the blind mule issue. Because defense counsel objected, judge would object this expert has no qualifications in Mexico. That's where the defendant was threatened. And she said, well, this doesn't go to that issue. It only goes to the issue of unknowing couriers or blind mules. And the government didn't correct that misapprehension. And so at the time, the district court ruled that this expert was qualified. Even though at a pretrial conference, she knew the expert would talk about duress, at the time of trial, it appears that she was under the misapprehension that this expert wouldn't talk about duress, much less give an opinion that the likelihood of duress was almost nil, and that the likelihood of duress in an investigator was almost nil. Can you think of a question that could have been asked in Vore Dyer of the government witness that was not asked earlier in cross? Have you ever investigated a drug trafficking case as an investigator inside of Mexico? That would have begun to go down the road. I thought there was plenty of cross-exam on that. There was cross-examination. And contrasting the different experience between the two experts. I don't recall that being put that directly. There was cross-examination about how the defense counsel was trying to elicit that the expert didn't have much experience in Mexico. And she asked, have you interviewed people in Mexico? And he said yes. Well, it turns out it had only been on four trips to Mexico, which could be as few as four different defendants, and one had only been about corruption. But it wasn't directly put to the expert on cross and drawn out. The extent of the expert's experience, not only as an investigator in Mexico investigating how traffickers operate in Mexico, but also about his experience with social, political conditions, the conditions, the environment in which an ordinary citizen in Mexico might perceive a threat and perceive that it could actually be enforced and that police wouldn't be able to stop it. So I'm going to move on. The government agrees that both of these issues, the 704B issue with respect to this particular phrase, almost nil, and the qualifications matter were both preserved at trial. And so the government has the burden to show that those are more probably than not harmless, and it can't do that because this witness was so important. I'll move on to the denial of recross issue. Obviously, this was a duress case. But the government chose to also have its expert witness testify about unknowing couriers, about blind mules. And it, on direct, took up several pages of the transcript talking about blind mules and an equal number of pages talking about duress on the direct examination of this expert. So the issue of blind mules was important to the jury both in evaluating that expert's overall credibility and because the expert used the blind mule testimony as sort of a way the expert's testimony about blind mules and his credibility about blind mules in assessing the credibility of the duress opinion. But the blind mule defense is inherently inconsistent with duress, isn't it? Blind mule, the person is saying, I had no idea the drugs were in that vehicle. I don't know that they're inherently inconsistent. There is a case, Haysher, Hysher, where this court has held the defendant may hold the government to its burden of proof on mens rea and also claim duress. It doesn't, Felicity didn't assert a blind mule defense. But the government decided to go there. And the Sixth Amendment violation occurred in this case, the denial of recross, because new matter was elicited on redirect. On cross-examination, defense counsel tried to elicit from this expert what is a basic fact that we all now know that blind mules do exist. And that would have shown that traffickers don't always use paid couriers. They don't always use trusted couriers. And the expert said, and counsel put it to the expert directly, so you're aware that blind mules exist, correct? You can't put it to somebody any more clearly than that. And the witness said, I'm aware that there's a claim of being a blind mule. That's a denial. Mr. Valencia testified, correct? Yes. Did he say he was a blind mule? No, he denied knowing what was in the truck. He said he was threatened. And his family was threatened. Right. That's true. But when the witness then on redirect for the first time walks back that denial and says, of the 30 or 40 cases that I've been involved with that involve the issue of blind mules, all except for one of those were not blind mule cases. All except for one were not. And so he's strongly suggesting that he's aware for the first time of one blind mule case. And defense counsel asked for recross on that matter and it was denied. That recross would have pointed out several things. Number one, that this witness was inconsistent on And that would have shown bias. It would have shown that he's favoring the government because he's being evasive. And that would have gone to his overall credibility, both as the blind mule and to the duress opinion, which was so crucial. It would have pointed out also that because this expert based, at least in part, his almost nil opinion about duress on the fact that the use of blind mules and course couriers involve similar risks, if the witness then has to admit that, well, okay, there are some blind mule cases, then it certainly looks like the likelihood that traffickers would coerce somebody is, in fact, greater than nil. And so it went directly to the blind mule issue and to this, I'm sorry, to the duress question and this expert's credibility. I see I'm running out of, do you want to reserve? Yes. That issue was also preserved and the We'll give him two minutes when he comes back. Thank you. Good morning, Your Honors. May it please the court, Corey Manti appearing on behalf of the United States for the District of Arizona. Your defendant received a fair trial in this case. In terms of the first issue in this case, in terms of, I did. I was lead counsel in this case. I think the government lawyer in a case like this has an affirmative duty to protect the record. Absolutely, Your Honor. Then why didn't you tell Judge Zips when the defense asked for a recross, we have no objection? In terms of the recross examination question? Because the question on redirect did not raise a new matter that had not been clarified. Whether it does or not, that's your responsibility. You're in front of a panel here of three former prosecutors. And why couldn't you just say no objection? You are not going to be hurt by recross. Right? No, Your Honor. And as the government pointed out, this would not be on a material matter or a new matter. The testimony from Agent Hall in redirect was clarifying or I guess explaining the context of his answers on direct examination and cross examination about the investigations, the 30 to 40 investigations that he had handled involving claims of blind mule. And then on redirect he answered that of those cases, one did involve a blind mule. So it's the government's position that the matter on the blind mule issue had been clarified sufficiently. And I would point out, Your Honor, in terms of the direct examination of Agent Hall, the focus of that examination was a broad overview of the drug trafficking organization's modus operandi. So in terms of direct exam- Counsel, Rule 702C is not optional for the district court and it provides that the district court, that in order for expert testimony to be admitted, it must be the product of reliable principles and methods. Is there any place in the record where the district court made an explicit finding that the almost nil testimony was the I would say the qualification, the almost nil testimony occurred after the qualification of the witness. But is there any place, but I mean that was part of what the objection was. That was part of the Daubert objection. So is there any place, for example, where the district court even uses the word reliable? I don't believe, I don't believe that appears in the record. Tell me what your view is as to the best place for the government in the record where the district court made any kind of a Rule 702 finding. In terms of qualifying the witness, and Agent Hall starting at ER 187 discussed his background in this case. No, no. What I'm asking you is where in the record, from the perspective of the government, where's your best shot at saying here's where the district court made any kind of a finding that the testimony of Agent Hall was the product of reliable principles and methods? It would have to be the ruling by the court in which the court concluded, Judge Zips concluded that the objections to Agent Hall's testimony went to the weight of the evidence, not necessarily his qualifications to testify. But the fact is that Judge Zips never made a finding of reliability for Agent Hall. Correct? I would say that that would be inherent. You say it's implicit and inherent, given the whole record. Absolutely, Your Honor. There's no place in the record where the district court said, I find this expert witness to be reliable. His testimony is based on reliable indicia, accompanying an expert witness. I would say that that would also be implicit, this finding, in terms that the district court denied the defense's motion to exclude Agent Hall as a witness. Is there any place in our case law that you can point to where we've held that Daubert is satisfied simply by a court saying your objection is overruled, as opposed to explaining, even in the most cursory way, how the testimony is the product of the application of reliable principles? Is objection overruled enough to demonstrate that the district court has appropriately exercised the gatekeeping function? Yes, Your Honor. And I would point the court to the hanky decisions and other authority cited in the government's briefing that articulates the point that the district court has wide latitude and wide discretion. I understand the district court has wide discretion, but in a circumstance where there's no Daubert hearing, no voir dire allowed, that your view is that it's enough for the district court simply to say overruled goes to the weight, not the admissibility? Yes, Your Honor. Even though Daubert has nothing to do with the weight and everything to do with the admissibility? Well, the case law indicates that in terms of a case-by-case approach, again, the district court has wide latitude on qualifying the witness, and that includes the mechanisms for finding or inquiring whether this witness has expertise to talk about the subject matter. In this case, drug trafficking operations. I mean, what I'm additionally troubled by in this case, counsel, is that ER 204 to 205, although the district court doesn't come right out and say it. I mean, you can almost read this as the district court saying that Kumho-Tyre-Daubert doesn't really apply in a case such as this. I mean, that's not what the district court exactly said, but the district court says, I don't believe a Daubert hearing is required, particularly in light of the issues that were raised in the Daubert hearing. Of course, there was none about testing and such that don't apply to experts such as Agent Hall. I mean, with that, your view is still objection overruled is enough? Absolutely, Your Honor. I would direct the court to Hankey at page 1169, where the court said the Daubert factors, peer review, publication, potential error rate, etc., simply are not applicable to this kind of testimony whose reliability depends heavily on the knowledge and experience of the expert rather than the methodology or theory behind it. In this case, Your Honor, the subject matter or the qualifications of this expert turned on his specific knowledge of drug trafficking organizations. Why don't you tell me what in the record specifically demonstrates the reliability of a testimony that using duress mules in this case is the product of reliable application of methods? What was it in the record from Agent Hall that established that he was qualified to testify to the conclusion that the chances of using someone like this who was doing it as the product of duress was almost nil? What did he say from which we could conclude that that expert opinion testimony was reliable? The government would emphasize Agent Hall's testimony about his experience in controlled deliveries, undercover work, in which drugs were loaded in Mexico. And I would also direct the court, Your Honor, to ER 292 and 293, where he specifically said that he had not seen evidence of the use of unwilling couriers. So based on the prior testimony, the foundational testimony of his nearly 20 years of experience in law enforcement, federal, state, tribal, combined with his experiences interviewing people in Mexico. But when he said he hadn't seen it, what does that mean? I mean, how would he know in every case he was involved with whether somebody was someone who was a courier under duress? What was his testimony as to the fact that he hadn't seen it meant that in the cases that he was involved in, it wasn't involved, that there wasn't this type of coerced courier? I would say it was reflected on the fact of his experience investigating international drug trade. He commented extensively on the interviews that he had conducted with drug traffickers in Mexico. He commented on the fact that as a supervisor, he received briefing from his agents and subordinates, other agencies involved. So this comment is coming from that expanse of knowledge, his background investigating international trafficking involving Mexico and the United States. So this isn't just a comment that is without foundation. It was based on this wealth of experience of thousands of interviews with drug trafficking members, interviews that included people caught smuggling drugs from Mexico into the United States. So those are the important foundational points that established Agent Hall's bases, his reliability to discuss the drug trade. Did you ever ask Judge Zips to make an explicit finding of reliability as to Agent Hall? No, Your Honor. It wasn't on your checklist? I guess the government presumed that the reliability analysis had been conducted through the overruled objection, the fact that during the pretrial status conference, this issue actually came up in terms of what testimony would be introduced from the government experts. And the district court asked numerous clarifying questions. It sounds like you didn't think it was necessary. Excuse me, Your Honor? It sounds like you didn't think it was necessary. On that point, Your Honor, the government thought that the record was well developed from these pretrial proceedings, the qualifications. The government was you? One of the attorneys, yes. So in that courtroom, you were the government? Yes, Your Honor. Okay. Yes, Your Honor. Thank you. Counsel, during what you're talking about, this pretrial colloquy, the district court said certainly there can be voir dire of the expert during the time of the expert's testimony. Although the court says certainly there can be voir dire of the expert during that time as well to assure that he is qualified to testify as to these matters. But there was no voir dire here, correct? Not at the time of trial, no. Was there any voir dire ever? Not of Agent Hall. The foundation came through his testimony before qualification. But the court was certainly saying there would be, and then the court denied it, yes? The way I interpreted that language is there could be voir dire if there are further objections at the time of trial. There was an objection. And there was a request for voir dire. Correct. Which was overruled. Correct. Is that a standard practice, I ask your colleague, is that a standard practice in the District of Arizona that there is expert testimony or request for voir dire at trial that's routinely overruled? I don't know. I don't have a good answer to that. Your Honor, in terms of the second issue, there was no plain error in terms of the denial of recross examination. There was not a specific and timely objection made at the time of trial to preserve the issue. So plain error applies. Your Honor, in terms of, there wasn't anything new raised in the redirect examination that would require recross examination. And certainly on this record, there would be harmlessness given the fact that this was not a blind mule case. No blind mule defense was asserted. So any effect or prejudicial effect was non-nil in terms of the ultimate outcome of the verdicts. In terms of the jury instructions, third issue, the jury was instructed correctly. The comma did not make a difference. It was not objected to, right? That's correct. There was no objection to the added comma. It did not change the meaning of the jury instruction. The jury instructions were not misleading. And indeed, the parties were under the belief that the instruction could cover threats of violence to the family members. And that both sides made arguments based on the threats of violence or alleged violence directed to the defendant's family. And does the panel have any other questions? No, thank you very much, Counsel. Thank you, Your Honor. Before Mr. Moore begins with his rebuttal, we have a full house today, obviously. So as soon as Mr. Moore is done, I would ask any court personnel such as law clerks to go ahead and sit in our jury box. And if we have any lawyers who are licensed in this district, to go ahead and move up to the seats in front of the bar. We have a gentleman over here. Thank you for doing that. We're trying to make it more comfortable for all of you in the audience. Come up here and sit with Mr. Abney. All right, but we'll do that once Mr. Moore is finished. Mr. Moore, you have three minutes. No, two minutes, I say. We'll give you three. Thank you, Your Honor. First, as to the recross issue, the government says Newmatter was elicited on redirect examination, but it admits that on redirect examination, the witness admitted that he was aware of one case that did involve a blind mule. This court held in Vargas in 1991 that the Sixth Amendment guarantees a defendant the right to ask a witness about the inconsistency, to ask him to explain it and to point it out. The Sixth Amendment applies. The government argues that plain error applies here because there was no contemporaneous objection, but the objection was made at the first opportunity to do so, excuse me, the request for recross. And that was after the witness had testified on redirect and while the parties were at the bench settling, discussing jury questions. That's when defense counsel stated almost precisely what the testimony had been on cross versus on redirect and asked for recross, and the district court denied the matter. That was a timely objection, and it was an objection that implicated the Sixth Amendment. The request was for recross, but the Sixth Amendment is the only provision that requires recross. There's no rule in the federal rules that specifically addresses recross. And so the objection or the request for recross was preserved, and it was preserved on Sixth Amendment grounds. Even if the court thinks it wasn't, there was still an abuse of discretion in denying recross examination because the district court's finding in denying the request was clearly erroneous. The district court looked back at the testimony and cited one aspect where she thought that the witness had only testified, that he'd never testified in a blind meal case. Well, it's plain and it's error because several lines down on the transcript, the witness is asked point blank, so you're aware that blind meals exist, and he says I'm aware that blind meals are a claim. He did deny that knowledge, and so the district court simply erred as a factual matter, and a clearly erroneous factual finding is an abuse of discretion. In the DeConcini courthouse where you folks tried this case, was there contemporaneous testimony taken down and available to be quickly brought back? The answer to that is not clearly in the record, but I believe that it is apparent. I believe there is. Let me get to my point. Could you have asked the district court to go back through the direct testimony and see if something new was brought up? Well, that's exactly what the district court said she would do. She said I'm going to go back and look at the record and look for this, and then there are references to her looking at the transcript. She volunteered to do it. She volunteered to do it, and then once she did it and said, nope, I didn't find it, to push it more would have amounted to defense counsel saying, oh, well, you're wrong, judge. It's in there. Go back and look again. I mean the judge had ruled at that point. No exception was required. I see I'm about out of time. Last point. You can make it right now. The government argues that Halls was qualified based on his experience and knowledge because he hadn't seen evidence of duress. I haven't personally seen it either. It doesn't make me qualify. Because he interviewed hundreds of people, I've interviewed hundreds of defendants. It doesn't make me qualify to say that their claims are or are not true. Thank you very much, counsel. I appreciate it. Thank you both for your argument in this case. This matter is submitted.
judges: Hawkins, Owens, Bennett